UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| CHESTER L. BROOKS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO: 5:08-CV-081 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | ECF |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Chester L. Brooks seeks judicial review of a decision of the Commissioner of Social Security, Michael J. Astrue, denying his applications for disability insurance benefits and supplemental security income. The United States District Judge reassigned this case to the United States Magistrate Judge for further proceedings. Brooks did not consent to the jurisdiction of the court. According to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the district court affirm the Commissioner's decision.

**I.     Statement of the Case**

Brooks was forty-four years old when he filed his disability applications. (*See* Tr. 31.) He dropped out of school in the eleventh grade and was previously employed as a warehouse and rack room worker. (Tr. 31-33.) On October 23, 2004, Brooks was working at Mrs. Baird's bakery when he suffered an injury on the job and tore ligaments and cartilage in his knee. (Tr. 34.)

On November 29, 2005, Brooks protectively filed applications for disability insurance benefits and supplemental security income. (Tr. 12, 85-92.) In both applications, Brooks alleged that he became disabled on the date of his work injury. (*See* Tr. 85, 90.) He claimed that right knee

damage and gout limited his ability to work. (Tr. 102.) The claims were initially denied (Tr. 48) and again on reconsideration (Tr. 61.) Brooks then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 66.)

On June 18, 2007, a hearing was held before an ALJ. (Tr. 29-43.) At the hearing, Brooks was present and accompanied by a representative. (Tr. 31.) The ALJ heard the testimony of Brooks (Tr. 31-40) and Jerry Taylor, a Vocational Expert (VE) (Tr. 40-43). Based on a hypothetical question from the ALJ, the VE testified that an individual of Brooks' age, education and work history, who is limited to light work and a sit or stand option, who cannot climb, crawl, kneel or squat, but can occasionally stoop and crouch, and has a less than moderate concentration deficit and cannot constantly use his hands, could perform light unskilled work as a bakery line worker, folding machine operator, and a photograph finisher. (Tr. 40.) The ALJ then added an additional limitation to the hypothetical question and asked the VE to assume further that this individual was limited to sedentary work. (Tr. 41.) In response to the hypothetical with the additional limitation, the VE testified that such an individual could perform sedentary unskilled work as a weight tester, call-out operator, and an information clerk. *Id*.

The ALJ found that from Brooks' alleged onset date until August 2006 he retained the residual functional capacity to perform sedentary work limited to jobs which allow him to sit or stand at his option, require no constant use of the hands, and involve less than a moderate concentration deficit. (Tr. 16.) The ALJ found that Brooks regained the functional capacity in September 2006 to perform job duties at the light level of exertion limited to jobs which allow him to sit or stand at his option, require no constant use of the hands and occasional stooping and crouching, involve tasks allowing a less than moderate concentration deficit, and that involve no

climbing, crawling, kneeling, or squatting. (Tr. 18.) The ALJ concluded that Brooks could not return to his past relevant work, but considering Brooks' age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that he could perform. (Tr. 22-23.) The Appeals Council subsequently denied Brooks' request for review. (Tr. 4.) On April 14, 2008, Brooks filed this action.

## II. Standard of Review

In reviewing a determination by the Commissioner of Social Security, the court is limited to two issues: "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). The Supreme Court has defined "substantial evidence" as more than a scintilla and less than a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "is of such relevance that a reasonable mind would accept it as adequate to support a conclusion." *Falco*, 27 F.3d at 162.

## III. Discussion

Brooks claims the ALJ failed to comply with the Commissioner's policies in evaluating the severity of his fibromyalgia. He alleges that there is no evidence to refute the diagnosis of fibromyalgia and that the ALJ failed to properly evaluate it under the guidelines provided in Social Security Ruling (SSR) 99-2p (4/30/99). The Commissioner claims that the ALJ properly considered the evidence of Brooks' fibromyalgia. Moreover, the Commissioner claims that contrary to Brooks' argument, Ruling 99-2p does not provide guidelines for assessing fibromyalgia symptoms. Furthermore, the Commissioner claims that Brooks has not identified any specific authority or guideline that the ALJ failed to follow.

3

Under Ruling 99-2p, claims are to be adjudicated using the sequential evaluation process.[1] In this case, the ALJ adjudicated Brooks' claims under the sequential evaluation process and found: Brooks had not engaged in substantial gainful activity since his alleged onset date (step one); had the severe impairments of post arthroscopy right knee for small torn meniscus, a history of gout, a history of fibromyalgia that stabilized on medication, and obesity (step two); he did not have an impairment or combination of impairments that meets or equals a listed impairment in the Regulations (step three); he could not return to his past relevant work (step four), but considering his age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that he could perform (step five). (Tr. 14, 22-23.)

In evaluating the severity of Brooks' fibromyalgia, the ALJ also considered his pain, a principal symptom of the disease.[2] The record shows that Brooks' pain and fibromyalgia were well controlled on medication. (Tr. 280.) As a result of the stabilization of his fibromyalgia, the medication treatment was continued. *Id*. By his own admission, Brooks stated that his pain had been responsive to Ultracet and Elavil. (Tr. 279.) At one point he stated that the medications were

---

[1] In the five-step sequential evaluation process, the ALJ decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[2] "There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

"helpful." (Tr. 290.) Brooks' pain was not constant, unremitting and wholly unresponsive to treatment. *See Falco*, 27 F.3d at 163 (stating that pain has to be constant, unremitting and wholly unresponsive to treatment in order to constitute a disabling condition). Moreover, Brooks has not identified any authority or guideline that the ALJ failed to follow. The court recommends that the district court find that the ALJ properly evaluated the severity of Brooks' fibromyalgia.

The ALJ also properly considered Brooks' depression. The ALJ found that the depression failed to meet the duration requirement of 20 C.F.R. §§ 404.1509 and 416.909 (requiring an impairment to have lasted or must be expected to last for a continuous period of at least twelve months). (Tr. 22.) Substantial evidence supports this finding. In May 2007 William D. Ratnoff, M.D., recommended future treatment for Brooks' depression. (Tr. 287.) However, in a June 2007 progress record, Modupe Idowu, M.D., makes no mention of Brooks' depression. (Tr. 318.) Rather, Dr. Idowu notes that Brooks said he was better on Ultracet and Elavil; and Dr. Idowu increased the Elavil to 50 mg daily (Tr. 318-19) in accordance with the recommendation from Dr. Ratnoff for a higher dosage of Elavil to treat Brooks' depression. (*See* Tr. 287.)

Brooks testified that he has problems with gout in his ankles, hands, and practically all over due to swelling. (Tr. 37.) He contends that the ALJ mis-characterized the evidence when he found that there was no objective evidence to support Brooks' testimony of swelling in his hands and knees. The record demonstrates that he did have mild to moderate swelling in his knees. (*See* Tr. 148, 150, 154, 157, 159, 160, 162, 164, 182, 187, 188, 189, 190, 191, 192-97, 232, 279.) The record also contains evidence of swelling to his hands. (Tr. 219, 223, 225, 265, 273, 276, 295, 298, 299, 301.) However, the court does not need to reach the merits of this argument because, even if the ALJ made an error, the error would be harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.

5

2003). The jobs identified by the VE were based on a hypothetical that included a sit or stand option, no constant use of the hands, and a limitation of sedentary work in the case of a weight tester, call-out operator, and information clerk. These positions incorporated the limitations posed by any swelling in Brooks' hands and knees.

Based on the foregoing, the court recommends that the district court find that the ALJ properly evaluated the combination of Brooks' impairments and properly considered the combined effect of all impairments. There is substantial evidence of record to support the decision of the ALJ, and the ALJ analyzed the evidence in accordance with applicable law.

**IV. Recommendation**

Based on the foregoing reasons, this court recommends that the district court **AFFIRM** the Commissioner's decision and **DISMISS** Brooks' Complaint.

**V. Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: February 5, 2009.

NANCY M. KOENIG
United States Magistrate Judge